UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR-07-17-B-W |
| | ) | |
| NICOLE MARTIN | ) | |

**SENTENCING ORDER**

Nicole Martin is severely addicted to illegal drugs. Having pleaded guilty to possession with the intent to distribute cocaine, oxycodone, and heroin, she faces markedly different guideline sentence ranges depending upon whether her prior state and federal drug trafficking convictions are deemed one conviction or two for purposes of career offender status. The Court concludes that the two convictions were not part of a common scheme or plan and were not consolidated. For purposes of the calculation of the proper guideline range, the Court concludes that the career offender provision applies to the Defendant.

**I.  STATEMENT OF FACTS**

   **A.  The 2001 Mount Desert Island Heroin Investigation**

Officer James Carr, a thirteen-year veteran of the Bangor Police Department, knows Nicole Martin well. Assigned to the Maine Drug Enforcement Agency (MDEA), Officer Carr testified that he has a long history with Ms. Martin and that he has been involved in arresting her numerous times. In 2001, MDEA became concerned about the amount of heroin flooding the Mount Desert Island (MDI) area and initiated an investigation in which Officer Carr participated. The law enforcement strategy was to use a cooperating informant as an intermediary to introduce Ruth Duquette, an undercover agent, to Ms. Martin, who was known as a low-level dealer. Once the connection was made, the next step was to see if Ms. Martin would procure heroin for Agent

Duquette, and to follow Ms. Martin to the people from whom she obtained the heroin, essentially working up the pyramid to the more significant suppliers. Officer Carr readily acknowledged that Ms. Martin was not the focus of the law enforcement investigation.

Acting upon this plan, an approach was made on September 27, 2001 in Bass Harbor, Maine. Once introduced by the cooperating informant to Ms. Martin, Agent Duquette arranged to buy some heroin from her, and Ms. Martin unwittingly led the police to known drug dealer Christopher Richardson's residence. Mr. Richardson was not there and had to be paged. After establishing contact, Ms. Martin arranged with Mr. Richardson to meet at a gas station. Mr. Richardson arrived at the station in a blue van with another unidentified person, and using money provided by Agent Duquette, Ms. Martin bought ten bags of heroin. Ms. Martin gave Agent Duquette nine bags, keeping one either for herself or to be shared with Mr. Richardson. Ms. Martin ended up shooting the heroin immediately in the back seat of the undercover car.

Agent Duquette contacted Ms. Martin again on October 11, 2001 and arranged to buy four bags of heroin. Ms. Martin was working at a store in Bar Harbor, Maine and Agent Duquette had to wait for her to get out of work before pursuing the deal. This time Mr. Richardson was not involved. Instead, Ms. Martin planned a rendezvous in an automobile registered to a Ron Brown and emerged from the vehicle with four bags of heroin.

  **B.**  **State Charges and Guideline Treatment**

Ms. Martin's drug use and dealing caught up with her and by 2002, she was facing a series of state drug possession and trafficking charges. On February 5, 2002, a Hancock County grand jury indicted Ms. Martin for two counts of trafficking in heroin: Count One alleged the September 27, 2001 Bass Harbor incident and Count Two alleged the October 11, 2001 Bar Harbor incident; these charges were brought under docket number CR-02-31 in Hancock

County. *Indictment* CR-02-31 Def. Ex. 1. She separately faced two additional state charges: (1) an indictment arising out of a February 26, 2001 incident in Bangor, Maine that alleged she trafficked in and possessed heroin under CR-01-231; and, (2) an indictment arising out of an October 31, 2001 incident in Bangor that alleged she possessed heroin under CR-02-41.

Ms. Martin was represented by the same attorney on all state and federal charges. On August 27, 2002, she moved in the Hancock County case to consolidate and change venue to Penobscot County, where the other two state charges were pending. *Mot. to Consolidate and for Change of Venue* Def. Ex. 3. The motion was granted and the Indictment alleging the September 27, 2001 and October 11, 2001 charges was transferred to Penobscot County and consolidated with the other two state charges; the new docket number for the former Hancock County case was CR-02-625.

On September 11, 2002, Ms. Martin appeared in Penobscot County Superior Court, pleaded guilty to all indictments, but not to all counts, and was sentenced on each of the three pending criminal cases. The judge imposed concurrent sentences on each charge.

The Presentence Report in the instant federal case recommended treating the three state cases as a single sentence under U.S.S.G. § 4A1.2(a)(2). This recommendation has not been challenged. Under U.S.S.G. § 4A1.2(a), if concurrent sentences were imposed, the "longest sentence of imprisonment" is used, and in this case, the most severe conviction and the longest sentence turned out to be for the October 11, 2001 Bar Harbor incident.

    **C.**    **Federal Charge and Sentencing**

On April 9, 2002, a federal grand jury indicted Ms. Martin for the September 27, 2001 Bass Harbor incident, alleging the knowing and intentional possession of heroin with the intent to distribute it. *Indictment* CR-02-40 Def. Ex. 2. Ms. Martin pleaded guilty and on September

3

10, 2002, the day before her state sentencings, Ms. Martin was sentenced in United States District Court in Bangor to 366 days incarceration and three years supervised release. The transcript of the federal sentencing reveals that the sentencing judge was informed that there was a plea agreement in state court in which the state prosecutor and the defense had agreed to recommend to the state court a sentence of four years incarceration with all but one suspended and three years probation on all pending state drug charges. *Gov't's Mem. in Aid of Sentencing* Attach. 6, *Tr. Sept. 10. 2002 Sentencing* at 4:8-25, 5:1-5 (Docket # 30). The judge was also informed that the state plea agreement contemplated that the state sentence would run concurrently with the federal sentence. *Id.* at 5:6-7, 10-14.

During sentencing the federal prosecutor acknowledged that the September 27, 2001 incident had originally been indicted in state court and explained the "process we undertook in terms of charging Ms. Martin because, obviously, given the amount involved in this case, it looks like a small amount, and it is a relatively small amount compared to other cases in which -- which we prosecute." *Id.* at 11:10-15. He explained that the

> reason we decided to charge Ms. Martin federally is that, although the quantity is small, the evidence and intelligence we have is that Ms. Martin was - - was, in fact, somewhat a prolific, street-level dealer, and that we thought it was important not only for Ms. Martin, but also to the community that she get taken off the street as quickly as possible.

*Id.* at 11:19-25. He thought the "federal system is much more reactive" and would be able to "monitor her after she's done her confinement." *Id.* at 12:1-3. He recommended twelve months and a day and that she serve "both [the state and federal] sentences, basically, concurrently, although this court would not be ordering it concurrent." *Id.* at 13:19-23. The federal judge imposed a period of incarceration of one year and one day and a three-year term of supervised release.

### D. The September 11, 2002 State Sentencing

Ms. Martin came for plea and state sentencing the next day, September 11, 2002, in Penobscot County Superior Court. She pleaded guilty to felony and misdemeanor possession counts and a forfeiture count arising from the February 26, 2001 Bangor incident under CR-01-231; she pleaded guilty to a single felony possession count arising from the October 31, 2001 Bangor incident under CR-02-41; and, she pleaded guilty to Count Two arising from the October 11, 2001 Bar Harbor incident under CR-02-625. Count One under CR-02-625, the September 27, 2001 Bass Harbor charge, was dismissed.

The Assistant District Attorney made it plain at the state sentencing that the federal and state resolutions were coordinated:

> Your Honor, this is a case that the Court can see from the Hancock County indictment, there was (sic) initially two charges of trafficking on that indictment. However, because of some delays in getting these things to trial and difficulty in keeping Ms. Martin held on bail and, frankly, some concern about her safety given some of the observations made by Special Agent Duquette, one of these charges was charged in U.S. District Court in an effort to try to get her, frankly, detained and try to get her into some treatment. And so that was the Count 1, the conduct alleged in Count 1 of 02-625.

*Gov't's Reply Mem. in Aid of Sentencing* Attach. 1, *Tr. Sept. 11, 2002 State Sentencing* at 11:21-15; 12:1-7 (Docket # 42) (*State Sentencing Tr.*). The District Attorney went on to say:

> Ms. Martin was sentenced on that charge yesterday by Judge Singal and received a - - and Mr. Smith was there - - I believe a four-year all but 12 months and a day sentence so that she got out for good time, and three years supervised release on the federal charges. And that was part of a global agreement on the federal charges and the state charges in Penobscot County and Hancock County and Machias.

*Id.* 12:9-15.[1] On each felony count, the state judge imposed a sentence of four years with all but one year suspended followed by three years probation; on the misdemeanor count, he imposed a

---

[1] Mr. Smith later clarified that the federal sentence was twelve months and one day, not four years, all but one year and a day suspended. *State Sentencing Tr.* at 13:22-25.

sixty-day sentence. *Id.* 19:7-22. Significantly, the judge imposed concurrent terms for all sentences, including specifically the federal sentence. *Id.* 19:22-25; 20:1-2 (noting that "[a]ll sentences pronounced today are concurrent with each other and concurrent with any other sentence previously imposed, including, but not limited to the federal matter").

## II.     DISCUSSION

### A.     Career Offender Status

The Sentencing Guidelines provide that for certain defendants, deemed career offenders, the base offense level for committing a felony that is either a crime of violence or a controlled substance offense is dramatically escalated if the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Guidelines Manual § 4B1.1(a) (2006). The consequences of being found a career offender are not trivial: in Ms. Martin's case, if § 4B1.1 does not apply, she faces a guideline sentence of between 27 to 33 months;[2] if § 4B1.1 does apply, she faces a guideline sentence of between 188 to 235 months.[3] As Ms. Martin has pleaded guilty to a felony that is a controlled substance offense, the critical question is whether she has previously been convicted of two felonies that were controlled substance offenses.

In answering this question, the parties provided in their plea agreement to recommend that the Court apply the 2006 version of the United States Sentencing Guidelines to its guideline calculations.[4] Section 4B1.1 incorporates the definition of "controlled substance offense" in §

---

[2] Ms. Martin's base offense level would be 14 under § 2D1.1(c)(13) and her criminal history category would be V. She has accepted responsibility, reducing the total offense level to 12. At a total offense level of 12 and a criminal history category of V, the guideline range is 27 to 33 months.

[3] Her base offense level would be 34 under § 4B1.1(b)(B) and her criminal history category would be VI. She has accepted responsibility, reducing the total offense level to 31. At a total offense level of 31 and a criminal history category of VI, the guideline range is 188 to 235 months.

[4] The inclusion of this provision in the agreement reflects the considerable wisdom and foresight of defense counsel. Absent an *ex post facto* issue, the version of the guidelines in effect as of the date of sentencing is commonly applied to the calculation of the guideline sentence, *United States v. Wallace*, 461 F.3d 15, 22 n.3 (1st Cir. 2006), and Ms.

4B1.2 and Ms. Martin's prior state and federal felony convictions meet the definition. U.S.S.G. §§ 4B1.1 cmt. n.1, 4B1.2(b) (defining a "controlled substance offense" to mean "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the . . . distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to . . . distribute, or dispense").

### B. Related Cases

In the commentary to the 2006 version of § 4A1.2, the Sentencing Commission describes a related case exception to the general rule that "[s]entences for all felony offenses are counted." U.S.S.G. § 4A1.2(c) (2006). Prior sentences are considered related and counted as a single crime if "they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing."[5] *Id.* § 4A1.2 cmt. n.3. The September 27 and October 11, 2001 offenses took place on separate dates, so the first exception does not apply.

### C. Common Scheme or Plan

Ms. Martin contends that the two drug trafficking offenses in the fall of 2001 should be deemed a single offense, because there was a "factual commonality" between the two. *Def. Nicole Martin's Mem. in Aid of Sentencing* at 3 (Docket # 41) (quoting *United States v. Wiseman*, 172 F.3d 1196, 1219 (10th Cir. 1999). She argues that "[f]actors such as temporal and geographic proximity as well as common criminal investigations are dispositive." *Id.* (quoting *United States v. Shewmaker*, 936 F.2d 1124, 1129 (10th Cir. 1991)). She cites caselaw in which

---

Martin's attempt to avoid career offender status would have been hopeless under the current version of the Sentencing Guidelines. In pertinent part, the current version requires that sentences be counted separately unless they are contained on the same charging instrument or imposed on the same day. U.S.S.G. § 4A1.2(a)(2) (2008). Here, the federal and state crimes were not charged on the same charging instruments and were imposed a day apart. The "related cases" analysis that is decisive in this case under the 2006 version of the guidelines was eliminated on November 1, 2007. U.S.S.G. app. C,, am. 709 (effective Nov. 1. 2007).

[5] If there was an intervening arrest, the offenses must be considered separately, but there is no evidence of any arrests between any of Ms. Martin's crimes.

serial bank robberies, burglaries, and drug sales were considered part of a common scheme or plan. *Id.* at 3-4 (citing *United States v. Elwell*, 984 F.2d 1289 (1st Cir. 1993); *United States v. Breckenridge*, 93 F.3d 132, 138 (4th Cir. 1996); *United States v. Houser*, 929 F.2d 1369, 1374 (9th Cir. 1991).

Ms. Martin points out that the September 27 and October 11, 2001 drug sales were part of a single investigation concerning heroin distribution on MDI and that, as a low-level user, she was never the actual target of the investigation. For each drug deal, she was instead a means by which law enforcement could discover the source of heroin. Further, the reason law enforcement pursued the second drug deal on October 11, 2001 was not to confirm a second heroin deal by Ms. Martin, but only to further the investigation of other suspects. Finally, she notes that the two drug deals occurred on MDI in adjoining towns. Thus, she says, she meets the test for factual commonality, since the charges arose within a brief interval, and involve the same type of offense, the same law enforcement investigation, the same drug, and the same geographic area.

The United States disagrees. *Gov't's Mem. in Aid of Sentencing* at 7-11. It cites *United States v. Godin*, a case addressing two burglaries, in which the First Circuit concluded there was no common scheme or plan. 489 F.3d 431, 436 (1st Cir. 2007). In the illegal drug context, it cites *United States v. Garcia*, 962 F.2d 479, 482 (5th Cir. 1992), and *United States v. Lewis*, 11 Fed. Appx. 482 (6th Cir. 2001).

The First Circuit has observed that the concept of "single common scheme or plan" is "vague" and there is "no formal test." *Godin*, 489 F.3d at 436. At the same time, the First Circuit has provided helpful guidance. The Circuit Court has emphasized that the phrase "common scheme or plan" should be given its "ordinary meaning." *Id.* (quoting *United States v. Elwell*, 984 F.2d 1289, 1295 (1st Cir. 1993)). In *Godin*, for example, the defendant had

8

burglarized a different apartment in the same apartment building, one on July 26 and the next on August 1 of the same year, had in each case known the victim, had a grievance, had kicked the apartment door down, and had stolen various items. *Godin*, 489 F.3d at 434-35. Despite the similarities of these crimes, the close timing, the similar *modus operandi*, the same charge, the First Circuit concluded the crimes were not part of a "common scheme or plan." *Id.* at 436. "[B]urglaries of two different apartments committed by one actor several days apart need something more than resemblance of mode or motive even if that were relevant." *Id. Godin* states that "[a] scheme or plan implies some kind of connective tissue like an initial plan encompassing multiple acts or a sequence of steps to a single end." *Id.*

The application of this concept to a drug addict is admittedly problematic. A person, like Ms. Martin, desperately addicted to heroin, constantly seeks the drug, so it could be said that her life was reduced to a daily plan to engage in a sequence of steps leading to the single end of procuring heroin, and, as a heroin addict living on MDI, Ms. Martin could be expected to participate in a number of drug deals for heroin within a confined temporal and geographic space. But, to squeeze multiple drug transactions into a "common scheme or plan," the series of transactions has to be agreed to at the outset. Expanding on this concept, the Seventh Circuit described the test as being "whether the second crime was anticipated and planned when the original crime was planned or committed." *United States v. Marrero*, 299 F.3d 653, 657 (7th Cir. 2002) (internal punctuation and citation omitted). Otherwise, when a drug addict commits multiple crimes, whether robberies or drug deals, to support her habit, the crimes would be treated as a single conviction for sentencing purposes. As the Second Circuit pointed out in *United States v. Chartier*, this result would be contrary to the congressional intent and the "mere fact . . . that, in engaging in a pattern of criminal behavior, the defendant has as his purpose the

9

acquisition of money to lead a particular lifestyle does not mean either that he had devised a single common scheme or plan or, if he had, that his course of conduct was necessarily part of it." 970 F.2d 1009, 1014-16 (2nd Cir. 1992); *United States v. Chapnick*, 963 F.2d 224, 227 (9th Cir. 1992).

In Ms. Martin's case, although the September 27 and October 11 transactions were part of the same police investigation, there was no agreement with Ms. Martin at the first deal that a second one would follow. In fact, to the extent there was an agreement for future purchases on September 27, the discussion had taken place between Agent Duquette and Christopher Richardson, since Agent Duquette had attempted to avoid Ms. Martin and deal more directly through Mr. Richardson with the suspected supplier. The second deal, arranged through a different supplier, was a separate transaction, which was not planned, discussed, or contemplated at the first transaction. Accordingly, the two crimes were not related cases under § 4A1.2 as part of a "common scheme or plan."

### D. Consolidated for Sentencing

In *Buford v. United States*, the United States Supreme Court addressed the proper standard of review to apply to "a trial court's Sentencing Guideline determination as to whether an offender's prior convictions were consolidated, hence 'related,' for purposes of sentencing." 532 U.S. 59, 60 (2001). The trial court had concluded that the defendant's prior drug crime was not related, either formally or functionally, to the defendant's four prior robbery convictions. *Id.* at 62. Describing consolidation as a "minor, detailed, interstitial question of sentencing law, buried in a judicial interpretation of an application note to a Sentencing Guideline," the *Buford* Court concluded that the appellate court properly accorded deference to the district court's conclusion, given the "fact-bound nature of the legal decision." *Id.* 65-66.

Although *Buford* discusses functional consolidation for purposes of career offender status, it did not place its imprimatur on the concept and before *Buford*, the First Circuit had issued an express holding:

> at least in respect to offenses that are temporally and factually distinct (that is, offenses which occurred on different dates and which did not arise out of the same course of conduct), charges based thereon should not be regarded as having been consolidated (and, therefore, 'related') unless the original sentencing court entered an actual order of consolidation or there is some other persuasive indicium of formal consolidation apparent on the face of the record which is sufficient to indicate that the offenses have some relationship to one another beyond the sheer fortuity that sentence was imposed by the same judge at the same time.

*United States v. Correa*, 114 F.3d 314, 317 (1st Cir. 1997). *Correa* also limited the scope of the "judicial inquiry into a defendant's criminal past" to "the formal record - - the indictment, the docket entries, the judgment of conviction, and the like." *Id.*

The question of whether *Buford*'s functional consolidation discussion altered *Correa*'s more circumscribed holding was answered in *United States v. Bell*, a First Circuit case that followed *Buford*. 485 F.3d 54 (1st Cir. 2007). In *Bell*, the First Circuit reiterated that it had adopted a "categorical rule for determining whether charges were consolidated for sentencing," again restating the *Correa* holding and the restricted nature of the inquiry to "formal indicia of consolidation." *Id.* at 58. Even following *Buford*, *Correa* remains good law. *Godin*, 489 F.3d at 435 (stating that "[o]ur own cases insisting on an order of consolidation or some other indicia of formal consolidation for (C) are representative"). In the First Circuit, absent a formal order of consolidation, there must be "sufficient indicia of formal consolidation." *Id.* In *Godin*, coordinated probation documents were "not enough on their own" in the face of "separate docket numbers and separate Judgment and Commitment orders." *Id.*

It is true that other circuits have adopted a less categorical approach to this question and some do not require a formal order of consolidation. *See United States v. Huskey*, 137 F.3d 283, 288 (5th Cir. 1998). In fact, the Sentencing Commission cited the *Correa* and *Huskey* cases as evidence of "circuit conflicts" over the proper interpretation of § 4A1.2, which prompted its substantial revision in 2007. U.S.S.G. app. C, am. 709 (effective Nov. 1. 2007). But, the First Circuit is the court to which this Court owes its allegiance and it is bound to apply its directives in interpreting consolidation under § 4A1.2(a)(2). Here, even though there was a remarkable degree of coordination between the federal and state prosecutions and sentencings, the charges were initiated in separate courts by separate charging instruments through separate grand juries and brought before separate judges on separate days with separate docket numbers and resulted in separate judgments and commitments. Under *Correa*, *Bell*, and *Godin*, the federal and state crimes were not consolidated and must be treated separately for career offender status.

### III.  CONCLUSION

The Court concludes that Nicole Martin's federal conviction for the September 27, 2001 heroin transaction and her state conviction for the October 11, 2001 heroin transaction are separate controlled substance offenses under U.S.S.G. § 4B1.1(a), which qualify her for career offender status under the United States Sentencing Commission Guidelines.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of December, 2008