UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| NICOLE MARTIN, | ) |
| | ) |
| Movant, | ) |
| | ) 1:07-cr-00017-JAW |
| v. | ) 1:10-cv-00461-JAW |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

This recommended decision addresses a 28 U.S.C. § 2255 motion filed by Nicole Martin seeking federal habeas corpus relief. Martin was convicted by this court on drug-related charges and sentenced as a career offender. There was a revocation of supervised release involved, and her total sentence was 110-months after strong advocacy by her attorney in the face of a recommendation by the United States that was lengthier. Martin received a sentence of 108 months on the new criminal charges and a 15-month sentence on the revocation charge, with all but two months of that revocation sentence to be served concurrently with the new charges. As part of a plea agreement, Martin waived her right to appeal her guilty-plea conviction and sentence unless the sentence exceeded a base offense level of 31 on the new charge or the number of months provided for a Grade A supervised release violation on the revocation petition. (See Doc. No. 19.) Martin's sentence currently stands well below those parameters. Martin filed a pro se direct appeal with the First Circuit Court of Appeals but the Circuit concluded that the appeal was untimely. (See Doc. Nos. 74, 90, 95.)[1]

In her 28 U.S.C. § 2255 motion Martin advances three grounds. First, she maintains that her guilty-plea conviction was made without her understanding the nature of the charges and the

---

[1] In addition, Martin filed an appeal of the denial of transcripts which was also rebuffed by the Circuit.

consequences of the plea. (Sec. 2255 Mot. at 7, Doc. No. 96.) Martin now indicates that she did not understand at the time of her plea that she would be admitting to conduct that could provide the basis for a career offender sentence and complains that her attorney, Marvin Glazier, did not sufficiently advise her apropos this sentencing exposure. (Id.)[2] Second, Martin insists that she was denied her right of appeal; she maintains that she was given a promise by counsel that he would appeal (apparently despite the appeal waiver in the plea agreement), and then counsel never followed through. (Id.) And, three, Martin presents a (somewhat cumulative) bucket list of complaints with counsel's performance.

For the reasons set forth below, I recommend that the court deny Martin 28 U.S.C. § 2255 relief.

## DISCUSSION

**Judgment by the First Circuit Court of Appeals**

With respect to Martin's pro se direct appeal, the First Circuit entered a judgment rejecting the appeal as untimely that contained the following observation:

> Martin contends that the time for her to file a notice of appeal should be "equitably tolled". Even assuming hypothetically that such equitable tolling could ever be permissible, doing so would not be appropriate here. Martin was clearly informed at her sentencing hearing of the deadlines for filing notices of appeal but did not do so for many months. Consequently, due diligence has not been shown here. In addition, she asks that her notice of appeal be recharacterized as a section 2255 petition. However, even were such recharacterization a possibility, the notice of appeal did not assert any specific claims that could reasonably be construed to constitute a section 2255 claim. Consequently, recharacterization would not be appropriate here. As a result, the appeal is dismissed. We note, however, that while this appeal was pending, Martin attempted to file an "Omnibus Motion and Affidavit in Support," dated December 19, 2009, in the district court in which appellant claimed that counsel led her to believe that she could appeal after sentence. Because of the pending appeal, the district court forwarded that motion to this court. We take no position at this time on whether the "Omnibus Motion" might be treated as a section 2255 petition, but merely note that our dismissal does not foreclose appellant from seeking such

---

[2] Assistant United States Attorney Joel Casey prosecuted this case.

recharacterization by expressly filing a motion in the district court and arguing for recharacterization.

(Oct. 21, 2010, J. at 1-2, Doc. No. 90.) On November 9, 2010, I entered an order requiring that Martin resubmit her motion to vacate (Doc. No. 93) and Martin complied (Doc. No. 96).

**Ineffective Assistance of Counsel Standard**

Martin's 28 U.S.C. § 2255 claims are dependent on proving ineffective assistance of counsel under the Strickland v. Washington, 466 U.S. 668 (1984) Sixth Amendment standard and Hill v. Lockhart, 474 U.S. 52 (1985) that addresses ineffective assistance claims related to plea decisions. "In order to prevail," Martin must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Martin "must demonstrate both seriously-deficient performance on the part of [her] counsel and prejudice resulting there from." Id. "Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993).

*Nicole Martin's 28 U.S.C. § 2255 Grounds[3]*

**Counsel's advice respecting the decision to plead guilty, the career offender determination, and the decision to give up the right to appeal**

---

[3] Martin's reply is much more elaborate than her 28 U.S.C. § 2255 motion with regards to how she describes the premises for her entitlement to habeas corpus relief. The concern here is that the United States has not had a sufficient opportunity to respond to the nuances of Martin's grounds because there was only a bare-bones articulation of the challenges in her 28 U.S.C. § 2255 motion even after the Court gave Martin leave to file a comprehensive 28 U.S.C. § 2255 motion. If this becomes a concern for the United States it will have the opportunity to respond to this recommended decision.

In her first enumerated 28 U.S.C. § 2255 ground Martin asserts in a conclusory manner that she did not enter into a knowing and intelligent plea and faults her attorney for not properly counseling her during this time of decision. In her reply memorandum Martin does little to expand on this concern, focusing more on sentencing issues, primarily her career offender status. (See generally Reply Mem., Doc. No. 115.) On the fourteenth page of her reply memorandum Martin begins to discuss her plea negotiations and the involvement of the prosecutor and her attorney. Martin's explanation is coherent enough; she complains that she got little value added by agreeing to waive her appeal rights as to the conviction and the revocation. (Id. at 14-15.)

The September 22, 2008, Revised Presentence Investigation Report (PIR) recommended a two-level deduction due to Martin's guilty plea. (PIR ¶ 16.)[4] Moving on to Martin's career offender status, the report reflected a departure of three from the heightened offense level of 34, bringing Martin to a level 31. (Id. ¶¶ 18-20.)

This Court conducted an evidentiary hearing on Martin's career offender status on November 20, 2008. The Court acknowledged the gravity of the PIR's career offender recommendation and the determination it had to make at this pre-sentence hearing. The following exchange took place between the Court, the prosecutor, and defense counsel:

> THE COURT: All right. So the next question was how I calculate this, and at first, I looked at the 2007 guidelines to see what impact the 2007 guidelines would have, but, of course, as I'm sure Ms. Martin knows, she's represented by a very fine lawyer, and if it were the 2007 guidelines, the course of conduct issue would not be present because it's been excised by the sentencing commission. So the only question would be whether or not she was sentenced on the same day, and she wasn't, so these two would be considered separate under the current guidelines. Is that your understanding, Mr. Casey?
> MR. CASEY: Yes, Your Honor. And in addition, Your Honor, the plea agreement that was entered into between the government and the defendant, the parties agreed to recommend that the court apply the 2006 guidelines.
> THE COURT: Well, right. I hadn't gotten to that.

---

[4] There were earlier reports prepared by another probation officer. Those reports apparently did not recommend career offender status.

4

> MR. CASEY: Oh, okay, Your Honor.
> THE COURT: Right. So is that correct, Mr. Glazier? If this were considered under the current guidelines, other than the 3553(a) argument, the guideline would require separate treatment of these two convictions?
> MR. GLAZIER: That's my understanding, Judge, yes.
> THE COURT: All right. And then you get to the why Mr. Glazier's such a good lawyer, and that is that he's been careful to put in the plea agreement that the parties recommend that the 2006 edition of the guidelines manual applies, and as such, the question then comes down to really, as I understand it, two issues, and the first is whether these two separate convictions were part of the same course of conduct or scheme or plan, and the second is whether they were consolidated for sentencing purposes; is that right?

(Nov. 20, 2008, Evidentiary Hr'g Tr. at 4-5, Doc. No. 89.)

The Court ultimately determined that Martin did fall under the career offender status of the 2006 guidelines, despite counsel's advocacy on Martin's behalf. It explained in its sentencing order following the evidentiary hearing on Martin's career offender status,

> the parties provided in their plea agreement to recommend that the Court apply the 2006 version of the United States Sentencing Guidelines to its guideline calculations. Section 4B1.1 incorporates the definition of "controlled substance offense" in § 4B1.2 and Ms. Martin's prior state and federal felony convictions meet the definition. U.S.S.G. §§ 4B1.1 cmt. n.1, 4B1.2(b) (defining a "controlled substance offense" to mean "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the ... distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to ... distribute, or dispense").

United States v. Martin, 588 F.Supp.2d 114, 118 (D. Me. 2008) (footnote omitted). Importantly, with respect to the pending 28 U.S.C. § 2255 ineffective assistance of counsel grounds, the Court observed:

> The inclusion of this provision in the agreement reflects the considerable wisdom and foresight of defense counsel. Absent an *ex post facto* issue, the version of the guidelines in effect as of the date of sentencing is commonly applied to the calculation of the guideline sentence, United States v. Wallace, 461 F.3d 15, 22 n. 3 (1st Cir.2006), and Ms. Martin's attempt to avoid career offender status would have been hopeless under the current version of the Sentencing Guidelines. In pertinent part, the current version requires that sentences be counted separately unless they are contained on the same charging instrument or imposed on the same day. U.S.S.G. § 4A1.2(a)(2) (2008). Here, the federal and state crimes were

5

> not charged on the same charging instruments and were imposed a day apart. The "related cases" analysis that is decisive in this case under the 2006 version of the guidelines was eliminated on November 1, 2007. U.S.S.G. app. C, am. 709 (effective Nov. 1, 2007).

Id. at 118 n.4. The court further explained why it believed that the two earlier transactions which had resulted in the two prior convictions, while part of the same police investigation, were not part of the same transaction. The second deal, arranged through a different supplier, was a separate transaction, which was not planned, discussed, or contemplated at the first transaction. "Under § 4A1.2" the court found they were not part of a "common scheme or plan." Id. at 120. With respect to the question on consolidation, the Court carefully explained its analysis of Buford v. United States, wherein the United States Supreme Court addressed the proper standard of review to apply to "a trial court's Sentencing Guideline determination as to whether an offender's prior convictions were consolidated, hence 'related,' for purposes of sentencing." 532 U.S. 59, 60 (2001). The sentencing court here acknowledged that this question of how to treat these two convictions under the Guidelines to be difficult, given the "fact-bound nature of the legal decision." See id. at 65-66. The judge reviewed at length First Circuit precedent on the consolidation issue and concluded that he was required to treat the two prior convictions separately for career offender status. Martin, 588 F.Supp.2d at 120-21.

The sentencing order issued on December 12, 2008. From there, this Court summarized its guidelines calculation at sentencing, indicating that Martin's sentencing range was 188 to 235 months. (Sentencing Tr. at 7.) The prosecution asked the Court for a sentence of 150 months on the new criminal charges (id. at 9) and a consecutive sentence of 20 months on the probation revocation (id. at 14).[5] In the end, Martin received a total sentence of 110 months, with the court making only two months of the fifteen-month revocation sentence consecutive. (Id. at 44-45.)

---

[5] With respect to counsel's performance, Martin diminishes the fact that she was ultimately sentenced to even less imprisonment than this rather lenient recommendation made by the prosecutor.

Reading the record as a whole, there is little doubt that the Court's own estimation of Martin's attorney's performance survives scrutiny under Strickland. See McGill, 11 F.3d at 225. This Court took a very measured approach to the career offender determination and Martin's attorney certainly gave it his all in the context of the evidentiary hearing carefully convened by the Court on this precise concern because the issue was not at all crystal clear.

What Martin fails to now credit is the tactical advantages counsel secured by pleading guilty given the dire sentencing prognosis she faced. The plea agreement set the table for a government recommendation for acceptance of responsibility reduction and consented to the application of the 2006 guidelines to Martin. (Doc. No. 19 at 2-3.) As the court explained at sentencing, without Martin's career offender status her offense would have been 12, with the two point deduction for acceptance of responsibility. (Sentencing Tr. at 6.) With the career offender status she stood at 31. (Id. at 7.) Her criminal history category was VI with the career offender status rather than V. (Id.) As this Court clarified at sentencing, at an offense level of 12 and a criminal history of V, Martin was looking at 27 to 33 months. (Id. at 32.) The sentencing judge added,

> in fact, this may have been her range if she had committed these same crimes in some, but not all other circuits.
> However, under First Circuit law, the convictions and sentences had to be treated separately, and she became a career offender, and her guideline sentence escalated to 188 to 235 months. The court is also cognizant that these convictions, the ones that led to her status as a career offender, though separate for guideline purposes, took place within a brief span of time and reflect her position as a low level drug dealer at that time, whose contacts were used by law enforcement to gain access to more significant suppliers. The court, as the order indicates, owes its allegiance first to the First Circuit, but in evaluating 3553(a) factors, the court can take into consideration that in other circuits, similarly situated defendants would receive substantially lower sentences.

(Sentencing Tr. at 38.)

With respect to Martin's contention that her counsel did not follow through on a promise

7

to appeal this career offender determination, in her motion to vacate Martin states only: "Petitioner desired to and stated [her] desire to appeal and counsel had promised her in written correspondence that he would appeal the Judge[']s decision yet never filed any appeal." (Sec. 2255 Mot. at 7.) In support of this assertion, in her reply Martin cites an attached letter by her attorney dated December 4, 2008. (Doc. No. 96-1, Page ID No.441.) In that letter Martin's attorney does indicate with respect to the career offender determination: "I enclose a copy of a decision from the Judge, which we will have to Appeal. In any event, your hearing on the Revocation of Supervised Release and your sentencing have been scheduled for January 5, 2009, at 9:30 a.m. at the United States District Court in Bangor." (Id.) Martin has attached to her reply her own affidavit and statements by three other individuals that support her claim that her attorney assured Martin that there was a prospect for appeal and that he was 'working on it.' (Doc. Nos. 115-1, 115-2, 115-3, 115-4.) She fully discusses these dynamics in her reply indicating that her attorney was a trusted family friend, had previously represented Martin, and that she relied on his assurances that they could and he would pursue an appeal centered on the career offender status. (Reply at 20-22.)

As for its position on this concern, the United States summarizes:

> After… hearing Martin's thoughtful and articulate allocution and considering all of the 18 U.S.C. § 3553(a) factors, the Court balanced her stated "good intentions" in 2002, repeated failures to grasp the "stop signs that you were racing through" and the need to protect society and other addicts from Martin's illegal conduct (S.Tr.33-43). Endeavoring to "strike[] the right balance," the Court imposed a 108-month prison term that was nearly 7 years below the bottom of the GSR (S.Tr.44-45). The Court imposed 15 months on the revocation, with all but two to run concurrently to the 108 months--thereby producing a total of 110 months (S.Tr.44-45).
> At the end of the hearing, the Court reviewed the appellate waivers contained in the Plea Agreement Martin had entered (S.Tr.48-50). After repeating that the Agreement stated that Martin agreed not to appeal a prison sentence for the 2007 drug offenses that did not exceed the number of months authorized in Offense Level 31, the Court stated,

> The sentence I imposed is far below the sentence for an Offense Level 31, and therefore, that appeal waiver is effective as to the sentence I just imposed on the underlying crime of 108 months.
> (S.Tr.49).

> Neither Martin nor her attorney stated or interjected that they believed otherwise (S.Tr.).
> The Court next recited the appellate waiver pertaining to the revocation proceedings and explained that the 15-month sentence imposed there was also below the number of months authorized for Grade A violations and, thus, that waiver "applies, as well" (S.Tr.49). Thus, the Court explained:

>> [B]y virtue of the plea agreement, you have given up your right to challenge both your guilty plea and your admission of the revocation petition. You've also agreed...not to appeal the sentences I just imposed.
>> (S.Tr.49-50).

> Neither Martin nor her attorney stated or interjected that they believed otherwise (S.Tr.).
> The Court added that:

>> If, for any reason, you believe that the plea agreement is ineffective, you have a right to -- and you wish to challenge that by way of appeal, you must file an appeal with[in] ten days of today, and not thereafter. Do you understand?
>> (S.Tr.50).

> Martin replied, "Yes, Your Honor," and then confirmed that she understood that if she failed to file an appeal within 10 days of sentencing, "you will have given up your right to challenge the effectiveness of the plea agreements" (S.Tr.50). Judgments in both cases entered the following day, January 6, 2009 (2002.Docket #42; 2007.Docket #68). Martin did not file a notice of appeal within 10 days (Docket entries).

(Answer at 18-19, Doc. No.112.)

Nevertheless, Martin insists in her reply to the United States' motion for summary dismissal that she was assured by counsel that "she could appeal her conviction in an untimely-barred manner" yet she filed a notice of appeal that was summarily dismissed as untimely. (Reply at 1, Doc. No. 115.) In this reply Martin further emphasizes that she gained very little from the government by way of sentencing recommendations when entering into the plea. (Id. at

9

14-15.)  On this score, Martin expounds:

> From the very point of the arrest [Martin] desired to cooperate with authorities.  She understood that she was more than likely facing a term of imprisonment greater than the year she had served her first [t]ime around.  [Martin's] immediate cooperation led to the arrest of two defendants and the seizure of drugs that never got the opportunity to find their way onto the streets of Maine. When [her attorney] told [Martin] that she must cooperate further and proffer with the government in order for her cooperation to be complete, she was somewhat disappointed.   Not for lack of wanting to turn her life around and do the right thing, but for fear of retaliation while in prison.  Still [Martin] obliged the proffer.
> In the attorney-client conversations immediately preceding [Martin's] signing of the [plea agreement her attorney] gave his client the contract without reading it to her or explaining its contents.  After reading the [plea agreement Martin] was none too pleased with its terms, namely the level 31 GSR, appeal waiver, and enhanced penalties for TSR.  [Martin] had expected that surely the risk she had put herself into by duping her drug dealer via telephone to fall into the hands of the DEA, and then offering to cooperate more, would have yielded a better bargain than no promises, loss of rights, and enhanced penalties. … [Martin] then turned to her counsel for clarifications, asking, "If things do not go as planned, can I still appeal?"  [Counsel] answered, "yes."  [Martin] was still troubled, examining the agreement more, "Do I really need to sign this?" In response to his client's hesitation, and without explaining any other [] alternatives, without trying to negotiate a more beneficial plea, without formally resolving the guideline issues, [counsel] answered, "yes, you have to."  Heeding the misleading advice of her counsel, [Martin] signed the plea agreement and pleaded guilty. Subsequently, unknowingly and involuntarily signing an appeal waiver, and accepting [Career Offender] status with enhanced penalties. These actions and inactions clearly render ineffective assistance of counsel.

(Reply at 15-16.)

Martin does allow that she "in no way suggested that her defense counsel offered an inaccurate sentence prediction as the Government falsely purports."  (Reply at 18.)  In essence her complaint is not that her plea agreement waiver of appeal was not voluntary and knowing but that her attorney gave her misleading indications after the fact that she could appeal her career offender status.  Under these circumstances, her complaint about her lawyer's performance is not a premise for a Sixth Amendment attack on Martin's career offender status.  In fact, even though the Court applied the career offender status in his guidelines calculations, the sentence counsel

10

ultimately obtained for his client was well outside of those calculations. Given the record evidence concerning her own knowledge of her right of appeal, neither does it appear to me that her petition successfully presents a Sixth Amendment challenge to counsel's failure to pursue a timely appeal on her behalf.

**Martin's various other discontents with counsel's performance**

In her 28 U.S.C § 2255 motion Martin lists a host of issues she has with her attorney. There is some redundancy with regards to her first and second 28 U.S.C. § 2255 grounds addressed above. In terms of those claims that are not redundant, Martin begins her reply memorandum by faulting counsel for failing to object to factual and legal errors in this Court's sentencing judgment, failing to cite valid case-law and relevant sentencing guidelines, failing to subpoena crucial witnesses to "pre-trial hearings," and failing to obtain necessary evidence to support Martin's case. (Reply at 2.)

Martin again focuses on the career offender evidentiary hearing and claims that her attorney should have called Agent Ruth Duquette to testify to certain factual details related to Martin's prosecution in Maine for the 2002 predicate offenses. (Id. at 3.) Martin believes that Duquette exceeded the bounds of her law enforcement discretion when it came to her coaxing along Martin in the controlled-buy operations, witnessing Martin inject heroin in the undercover car, and even buying Martin, as an eighteen-year-old, alcohol on Martin's request to ensure Martin's cooperation. (Id. at 3 -4, 9.) Such concerns are not easily discarded, but the Court was aware of the circumstances of Martin's use of heroin in the undercover car and the general tenor of the undercover investigation. (Nov. 20, 2008, Evidentiary Hr'g Tr. at 21, 26, Doc. No. 89.)

Martin's discontent with the supposed factual and legal errors of the Court in not viewing her 2002 state case as part and parcel of the federal indictment (Reply at 6, Doc. No. 115) is

really not sustainable as an ineffective assistance of counsel claim. The Court carefully considered that very issue in arriving at Martin's sentence. (See, e,g,, Doc. Nos. 41, 62, 86, 89.) Martin cites lots of legal sources that she contends should have been pressed by her attorney (Reply at 6-14) but there is no basis on this record to conclude that if counsel had advocated in a different way with respect to Martin's federal sentence the outcome would have been different given the thoroughness of this Court's review of the crucial concern.

On July 10, 2008, Martin sent her attorney a letter containing her objections and explanations in response to the United States' sentencing memoranda (Doc. Nos. 30, 42). (See Reply at 18; Doc. No. 115-6.) Martin indicates that she listed many lies and inaccuracies by the Assistant United States Attorney that she characterized as exaggerating her criminality and portraying her as immoral. (Reply at 18-19.) Martin states that her attorney did not address the letter with her and she assumed that he would raise the points in the (pre-sentence) conference of counsel. (Id. at 19.) Martin points to counsel's failure to prevent the United States from entering a copy of her MySpace blog into evidence at the sentencing. (Id.; see also Doc. No. 42.) In addition, Martin faults her attorney for not requesting a departure pursuant to United States Sentencing Guideline § 4A1.3(b)(1) on the basis that her criminal history was overstated. (Reply at 23.)

As best as I can surmise from a review of the record, Martin came into this proceeding with the hand that she was dealt -- a hand that she pretty much dealt herself although the cards were not always shuffled in her favor -- and her attorney made a good effort to stem some of the detrimental implications of her continued involvement in criminal drug-related activity over the course of many years. The career offender determination was undoubtedly a key post-plea turning point in this Court's deliberations. It is not a normal course to hold an independent

evidentiary hearing on the precise and, in this case, difficult career offender determination.  The Court undertook this mission in deference to defense counsel's strong advocacy on behalf of Martin.  Ultimately the Court ruled against Martin on the career offender issue, but I can see no way that defense counsel should be faulted under the Strickland performance/prejudice standard for that outcome.

Whether a 28 U.S.C. § 2255 evidentiary hearing is necessary to address Martin's complaints about her attorney's failure to appeal the career defender status determination is difficult to determine on the current record.  In the final analysis even if her attorney promised to appeal that outcome, given the actual sentence imposed and the nature of the plea agreement, I fail to see how Martin or her attorney could have mounted any such appeal.  Furthermore, the record evidence is actually relatively silent about post-sentencing discussions between counsel and Martin about any appeal.  Given the outcome of the actual sentencing, the career offender determination did not fully control the sentence, thus blunting the force of counsel's earlier letter to Martin promising an appeal of the career offender determination.  (See Doc. No. 115-5.)  The assertion of counsel's failure to file a direct appeal when Martin maintains she gave explicit instructions to appeal would ordinarily be the subject of an evidentiary hearing. See, e.g., Rodriquez v. United States, 395 U.S. 327 (1969).  However, even assuming that such a conversation/correspondence occurred, I cannot discern how a factual finding in Martin's favor on this particular issue would somehow ultimately result in her sentence being vacated based upon a finding of ineffective assistance of counsel.

## CONCLUSION

I can see no sustainable premise for furthering this 28 U.S.C. § 2255 motion based on an ineffective assistance of counsel theory.

As set forth above, I recommend that the Court grant the United States' motion for dismissal of this 28 U.S.C. § 2255 motion. Whether or not a certificate of appealability should issue in this matter depends upon whether the Court identifies a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

### **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

November 15, 2011.